IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>GREG ALAN JOHNSON,<br><br>    Defendant. | Case No. CR 06-1037<br><br>REPORT AND RECOMMENDATION |

TABLE OF CONTENTS

I. INTRODUCTION .................................... 2

II. PROCEDURAL HISTORY ............................. 2

III. RELEVANT FACTS ................................ 3

IV. ANALYSIS ....................................... 5
    A. Are there Important Governmental Interests at Stake? ............ 6
    B. Will Involuntary Medication Significantly
        Further the Government's Interests? ....................... 7
        1. Restoration to Competency ........................... 8
        2. Interference With Ability to Assist in Defense .............. 10
    C. Is Involuntary Medication Necessary to
        Further the Government's Interests? ....................... 10
        1. Alternative Treatments. ............................. 11
        2. Less Intrusive Means of Administering the Medication. ....... 11
    D. Is the Administration of the Drugs Medically Appropriate? ........ 11

V. SUMMARY ....................................... 12

VI. RECOMMENDATION ............................... 13

## I. INTRODUCTION

On the 15th day of May, 2007, this matter came on for hearing on the request of the Government to have Defendant involuntarily treated with psychotropic medication in order to restore his competency to proceed to trial. The Government was represented by Assistant United States Attorney Ian Thornhill. Defendant Greg Alan Johnson appeared personally[1] and was represented by his Attorney, Stephen A. Swift.

## II. PROCEDURAL HISTORY

On July 11, 2006, Defendant Greg Alan Johnson was charged by Indictment with three counts of mailing a threatening communication. The Defendant entered a plea of not guilty and trial was initially scheduled on September 25, 2006. At the request of Defendant's counsel, the Court approved the retention of an expert to evaluate Defendant and report regarding Defendant's competency to assist in his defense and stand trial. Trial was continued on Defendant's motion to October 23, 2006.

Acting on a Motion for Competency Examination filed by the Government, the Court entered an Order on October 3, 2006, requiring Defendant to undergo a complete psychiatric examination at a facility designated by the Attorney General. The Court ordered the examiner to report regarding, among other things, "the extent that the defendant is unable to understand the nature and consequences of the proceedings against the defendant or to assist properly in the defendant's defense." (*See* docket number 17 at ¶ 1(d).) Trial was continued to December 11, 2006, and continued again to February 20, 2007.

On December 27, 2006, the Court entered an Order directing that Defendant remain in the custody of the Federal Medical Center in Lexington, Kentucky, until further order. According to the Order (docket number 25), the Court was advised by Dr. Karen Milliner,

---

[1] The hearing was held, without objection, by video conference. The Court and both counsel were in the United States District Courthouse in Cedar Rapids, Iowa, while Defendant and both witnesses were at the Federal Medical Center in Butner, North Carolina. The participants in each location were able to see and hear the participants in the other location.

a forensic psychologist with the Federal Medical Center, that Defendant was not then competent to stand trial. Dr. Milliner further opined, however, that "if Mr. Johnson is committed for treatment under the provisions of Title 18, United States Code, Section 4241(d), there is a substantial probability that he will attain the capacity to permit the trial to proceed in the foreseeable future." *Id.* at 1.

Two days later, on December 29, 2006, the Court entered an Order directing that Defendant "be hospitalized for treatment in a suitable facility to be designated by the Bureau of Prisons for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." (*See* Order, docket number 27 at 2.) The Order entered on December 29, 2006, further provided as follows:

> The Bureau of Prisons may administer psychotropic medication as a part of the defendant's therapy and may do so by force if the defendant does not acquiesce in that therapy.

*Id.* The trial was continued to May 7, 2007, and continued again to July 2, 2007.

In a letter to the Court dated April 4, 2007, Warden A.F. Beeler of the Federal Medical Center in Butner, North Carolina, requested "judicial oversight" regarding the involuntary administration of psychotropic medication for the purpose of restoring Defendant's competency to proceed to trial. (*See* docket number 46-1.) The Court set the matter for hearing on May 15, 2007. Chief Judge Linda R. Reade referred the matter to the undersigned for a report and recommendation regarding disposition of the Warden's request.

### III. RELEVANT FACTS

Defendant was transferred to the Federal Medical Center in Butner, North Carolina, on February 5, 2007. Since that time, he has been evaluated and treated by Dr. Robert E. Cochrane and Dr. Bryon Herbel, both of whom testified at the instant hearing. The opinions of Dr. Cochrane, a psychologist, and Dr. Herbel, a psychiatrist, are set forth in

3

a 30-page Forensic Evaluation, introduced into evidence at the time of hearing as Government's Exhibit 1.

Defendant, age 48, suffers from "schizophrenia, paranoid type, continuous." In their co-authored Forensic Evaluation, Drs. Cochrane and Herbel conclude that Defendant is not competent to stand trial.

> In regard to his competency to stand trial, Mr. Johnson currently displays several deficits that render him incompetent at this time. His delusions and disorganized thought process interfere with his rational understanding of the charges and legal proceedings, as well as his ability to properly assist his attorney. He cannot carry on a rational conversation for any extended period of time or respond relevantly to many questions. Mr. Johnson would not be able to make legal decisions after consultation with counsel, nor could he testify appropriately. He is easily distracted and preoccupied with perceived harassment by casino officials and mistreatment by his attorney and the Court. Given this, Mr. Johnson is considered not competent to stand trial.

*See* Forensic Evaluation, Government's Exhibit 1 at 7-8.

In June 1993, Defendant was hospitalized for several weeks at the Mental Health Institute in Independence, Iowa, and treated with antipsychotic and antidepressant medication. Defendant "improved" and no medication side effects were noted. Apparently, he has not been treated for a mental illness since that time.

Defendant is charged with three counts of mailing threatening communications to the Isle of Capri Casino between December 21, 2005, and June 8, 2006. Dr. Cochrane testified, however, that in his present clinical setting, Defendant does not constitute a danger to himself or others. Accordingly, the sole reason for the requested involuntary administration of psychotropic medication is to restore Defendant's competency to stand trial.

On February 15, 2007, shortly after his arrival at the Federal Medical Center in Butner, Defendant agreed to the recommended trial of the second-generation antipsychotic

4

aripiprazole (Abilify). A single dose was administered, but the following day Defendant complained of stomach pain, nausea, weakness, and a "drunk feeling." Alternate medications were offered to Defendant, but he declined.

Dr. Cochrane testified that he was unable to tell if Defendant's complaint of side effects was legitimate. According to Dr. Cochrane, Defendant has a tendency to complain without objective evidence. Upon his arrival at the facility, Defendant complained of medical problems, but has subsequently declined an offer for a full medical examination. During the three months that Defendant has been at the facility, his weight has increased from 170 pounds to 177 pounds.

According to Dr. Cochrane, schizophrenia is chronic in nature and typically requires treatment with psychotropic medication. Dr. Cochrane reports that Defendant has "no insight into his mental illness and is adamant he will not comply with any recommended treatment with psychotropic medication." (*See* Forensic Evaluation, Plaintiff's Exhibit 1 at 7.) In addition, Drs. Cochrane and Herbel opined that "[w]ithout treatment of his mental illness with antipsychotic medication, there is no reason to believe he will become competent to stand trial. There is substantial likelihood he will be restored to competency in the foreseeable future with medication treatment." (*See* Forensic Evaluation, Plaintiff's Exhibit 1 at 8.)

## IV. ANALYSIS

The analysis to be applied by the Court in determining whether the Government should be permitted to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant in order to render that defendant competent to stand trial for serious, but non-violent, crimes, is set forth in *Sell v. United States*, 539 U.S. 166 (2003). In *Sell*, the United States Supreme Court concluded that the Constitution permits the Government to involuntarily administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges, in order to render that defendant competent to stand trial, but only if a four-prong standard is met. *Id.* at 179.

5

> First, a court must find that *important* governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. . . .
>
> Second, the court must conclude that involuntary medication will *significantly further* those concomitant state interests. It must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair.
>
> Third, the court must conclude that involuntary medication is *necessary* to further those interests. The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. . . . And the court must consider less intrusive means for administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power, before considering more intrusive methods.
>
> Fourth, as we have said, the court must conclude that administration of the drugs is *medically appropriate*, *i.e.*, in the patient's best medical interest in light of his medical condition.

*Id.* at 180-181 (emphasis in original).

### A. Are there Important Governmental Interests at Stake?

The Court must first determine that important governmental interests are at stake. As set forth in *Sell* above, the Government has an important interest in bringing an individual accused of a serious crime to trial. The Court in *Sell* recognized, however, that "special circumstances may lessen the importance of the Government's interest in prosecution." *Id.* at 180. For example, involuntary commitment in a mental institution may "diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." *Id.*

The Court in *Sell* did not describe what is meant by a "serious" crime in this context. The Fourth Circuit Court of Appeals concluded in *United States v. Evans*, 404 F.3d 227 (4th Cir. 2005), however, that "it is appropriate to focus on the maximum penalty authorized by statute in determining if a crime is 'serious' for involuntary medication purposes." *Id.* at 237. In this case, Defendant is charged with three counts of mailing threatening communications. The letters allegedly include references to the possibility a bomb could be found inside a Christmas present and a threat that "maybe somebody might just kill you fuckin crooks." (*See* Indictment, docket number 2.) If convicted, Defendant faces imprisonment of not more than five years on each count. *See* 18 U.S.C. § 876(c).

The record supports a finding that Defendant has made threatening remarks in the past. According to the records from the Mental Health Institute at Independence, as referenced in the Forensic Evaluation introduced as Government's Exhibit 1, Defendant talked about killing his parents, carried a pistol with blanks on his person around the time he made threats to kill a local dentist, and also took a club or wooden stick to the dentist's office.

I believe that important governmental interests are at stake in prosecuting Defendant in this case. *See also Evans*, 404 F.3d at 238 ("We think it beyond dispute that the Government does have an important interest in trying a Defendant charged with a felony carrying a maximum punishment of 10 years imprisonment.").

### B. Will Involuntary Medication Significantly Further the Government's Interests?

The second prong in *Sell* has two parts: First, the Court must find that the involuntary administration of the recommended medication is "substantially likely" to render Defendant competent to stand trial; and second, it must find that the administration of the medication is "substantially unlikely" to have side effects that will significantly interfere with Defendant's ability to assist in his defense.

7

### *1. Restoration to Competency*

Doctors Cochrane and Herbel testified that the administration of antipsychotic medication is very successful in the treatment of persons suffering from schizophrenia. The Literature Review (Government's Exhibit 2), authored by Dr. Herbel, describes in detail various studies regarding restoration to competency of psychotic defendants by administration of psychotropic medication. Dr. Cochrane testified that one study places the likelihood of restoration to competency at 90%, while another study places the likelihood at 87%. Dr. Herbel's study apparently showed a 77% likelihood that a psychotic defendant would be restored to competency.

On the other hand, the literature suggests that 10% to 30% of patients will have little or no response to antipsychotic medications, and up to an additional 30% of patients have partial responses to treatment. According to Dr. Cochrane, persons showing partial improvement may be restored to competency, but still exhibit some symptoms. The opinion of Drs. Cochrane and Herbel in this regard was summarized in their Forensic Evaluation as follows:

> Applying the general data from the APA Practice Guideline to Mr. Johnson's case provides a wide range of predictions on his treatment outcome. Assuming the most optimistic interpretation, only 10% of patients will have little or no response to antipsychotic medication. This suggests he has up to 90% chance of restoration of competency with medication treatment. The most pessimistic interpretation of the data suggests Mr. Johnson has a 40% chance of restoration of competency. This pessimistic perspective assumes the worst treatment outcomes, predicting that 30% of patients will not respond at all and the additional 30% of patients who exhibit a partial treatment response will not respond enough to achieve competency status.

*See* Forensic Evaluation, Government's Exhibit 1 at 12.

The Court must find by clear and convincing evidence that the administration of the recommended medication is "substantially likely" to render Defendant competent to stand

8

trial.[2] The courts have not established any percentage or benchmark which meets the Supreme Court's standard of "substantially likely."[3] In the only Eighth Circuit case which has addressed the issue, the Court of Appeals concluded that "[a] five to ten percent chance of restored competence cannot be considered substantially likely under any circumstances." *United States v. Ghane*, 392 F.3d 317, 320 (8th Cir. 2004).

Factors which suggest that Defendant may respond positively to treatment include the onset of the illness relatively late in life (approximately age 34), Defendant's good health, the fact that he responded positively to treatment in 1993, and the fact that he has been relatively "high functioning." Predictors of a poor treatment outcome in Defendant's case include the fact that he is a male and his mental illness has been untreated for some time.

---

[2] The Eighth Circuit Court of Appeals has not determined whether a clear and convincing standard or a preponderance of the evidence standard attaches to *Sell* proceedings. *United States v. Ghane*, 392 F.3d 317, 319 (8th Cir. 2004). Nonetheless, several circuit courts of appeals have determined that a clear and convincing standard should apply. *See United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1229 (10th Cir. 2007) (instructing the district court to apply the clear and convincing test in determining whether it is constitutionally permissible for the government to forcibly medicate the defendant); *United States v. Evans*, 199 Fed. Appx. 290, 291 (4th Cir. 2006) (affirming the district court's finding by clear and convincing evidence that forcibly medicating the defendant would significantly further the Government's interest and was medically appropriate in light of the defendant's condition); *United States v. Gomes*, 387 F.3d 157, 160 (2d Cir. 2004) (concluding that relevant findings with respect to the four factors must be supported by clear and convincing evidence); *United States v. Brandon*, 158 F.3d 947, 961 (6th Cir. 1998) (stating that, in deciding whether to forcibly medicate an incompetent, non-dangerous pretrial detainee, the government must prove its case by clear and convincing evidence).

[3] *But see United States v. Lindauer*, 448 F. Supp. 2d 558, 566 (S.D.N.Y. 2006) (A 70% likelihood of success meets the *Sell* standard.); *United States v. Cruz-Martinez*, 436 F. Supp. 2d 1157, 1161 (S.D. Cal. 2006) (A 70-80% likelihood of restoring defendant's competency is sufficient.); *United States v. Rivera-Morales*, 365 F. Supp. 2d 1139, 1141 (S.D. Cal. 2005) ("Although the court declines to determine the exact percentage of success that equates with a substantial likelihood that a defendant's competency is restored, it is clear that a chance of success that is simply more than a 50% chance of success does not suffice to meet this standard."); *United States v. Leveck-Amirmokri*, 2005 WL 1009791 (W.D. Tex.) (The standard is met where there is a one in twenty chance that the medication would *not* work.); and *United States v. Morris*, 2005 WL 348306 (D. Del.) (A 70% percent chance of success meets the *Sell* standard of being "substantially likely.") (relying on testimony of Dr. Herbel).

9

After considering all of the facts and circumstances, I believe the Government has established by clear and convincing evidence that administration of the recommended medication is substantially likely to render Defendant competent to stand trial.

### 2. *Interference With Ability to Assist in Defense*

The second part of the second prong in the *Sell* standard is whether the administration of medication is substantially unlikely to have side effects that will interfere significantly with Defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair. As noted above, when a single dose of antipsychotic medication was given to Defendant on February 15, 2007, he complained of physical discomfort and also described a "drunk feeling." Dr. Cochrane testified that side effects of psychotropic medication are not uncommon, but are generally easily addressed. Dr. Herbel acknowledged, however, that if the medication is not prescribed competently, then excessive sedation is possible. Dr. Herbel opined that administration of the "lowest effective dose" will enhance, not hinder, Defendant's cognitive abilities. According to Dr. Herbel, Defendant will be able to better focus and pay attention.

I believe the Government has established by clear and convincing evidence that administration of the recommended medication is substantially unlikely to have side effects that will interfere significantly with Defendant's ability to assist counsel in conducting a trial defense. Therefore, I believe that the Government has established the second prong in the *Sell* standard.

### C. *Is Involuntary Medication Necessary to Further the Government's Interests?*

The third prong in the *Sell* standard requires a finding that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. Also, the Court must consider a less intrusive means for administering the medication, such as a court order to the Defendant backed by contempt power.

### *1. Alternative Treatments.*

Dr. Cochrane testified that psychotherapy alone is unlikely to restore Defendant to competency. In their Forensic Evaluation, Drs. Cochrane and Herbel opine that because Defendant does not believe his symptoms are the result of a mental illness, he cannot meaningfully engage in psychotherapy, thus making it unlikely that less intrusive treatments will achieve substantially the same result of restoring Defendant to competency. (*See* Forensic Evaluation, Plaintiff's Exhibit 1 at 21.) Furthermore, Defendant has thus far been unwilling to participate in therapy.

I believe the Government has established by clear and convincing evidence that a less intrusive treatment alternative is unlikely to achieve the result of restoring the Defendant to competency.

### *2. Less Intrusive Means of Administering the Medication.*

In addition, Dr. Cochrane believes that Defendant is unlikely to comply with a court order requiring him to submit to drug therapy, even under threat of contempt. Defendant has been adamant in refusing recommended medication, despite persistent efforts by Drs. Cochrane and Herbel to educate Defendant regarding the benefits of the medication. In their Forensic Evaluation, the doctors offer anecdotal evidence that persons suffering from psychosis and delusional beliefs are unlikely to be compelled by threat of contempt of court. (*See* Forensic Evaluation, Government's Exhibit 1 at 20.)

I have considered whether a court order requiring Defendant to submit to drug therapy, backed by the court's contempt power, will achieve the desired result. I believe that such efforts in Defendant's case will be unsuccessful and only serve to unnecessarily delay his treatment.

### *D. Is the Administration of the Drugs Medically Appropriate?*

The Fourth prong set forth in the *Sell* standard is a requirement that the administration of the drugs is medically appropriate. The Court must conclude that it is in the patient's best medical interest in light of his medical condition.

11

Doctors Cochrane and Herbal assert that the effectiveness of antipsychotic medication in treating schizophrenia and related psychotic disorders has been demonstrated repeatedly in published professional literature for nearly fifty years. (*See* Forensic Evaluation, Government's Exhibit 1 at 22.) Administration of psychotropic medication "is considered an essential element in the treatment" of schizophrenia. *Id.*

Defendant is not currently being prescribed any type of medication and, therefore, there is no risk of potential drug-drug interactions. The doctors report that "Mr. Johnson is in general good health and does not suffer from any medical ailment which would pose contraindications to treatment with antipsychotic medication." *Id.* at 23. I believe the Government has established by clear and convincing evidence that administration of the proposed medication is medically appropriate in this case.

## V. SUMMARY

I believe the Government has proven, by clear and convincing evidence, each of the four prongs enumerated in the standard set forth by the United States Supreme Court in *Sell v. United States*, 539 U.S. 166 (2003). Accordingly, the Constitution permits the Government to involuntarily administer antipsychotic drugs to Defendant in order to render him competent to stand trial. *Id.* at 179.

Beginning on page 24 of the Forensic Evaluation (Government's Exhibit 1), Drs. Cochrane and Herbel set forth a Proposed Treatment Plan. First, Defendant will be presented with a copy of the court order authorizing involuntary treatment with antipsychotic medication and be given an opportunity to consent to taking oral antipsychotic medication on a daily basis at the lowest effective dose. If Defendant is willing to cooperate with the requirements for administration of the oral medication, then treatment would proceed in that manner. If Defendant refuses to accept the recommended treatment with oral antipsychotic medication, or if he fails to fully comply with the treatment regimen, then Defendant would be treated with a long-acting injection of an

antipsychotic medication. Details of the Proposed Treatment Plan are found in the Forensic Evaluation (Government's Exhibit 1) at pages 24-28.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court GRANT the Government's request to involuntarily treat Defendant Greg Alan Johnson with psychotropic medications in order to restore his competency to proceed to trial. It is respectfully recommended that the District Court authorize the Government to proceed with the Proposed Treatment Plan set forth on pages 24-28 of the Forensic Evaluation, introduced at the time of hearing as Government's Exhibit 1. If the recommendation is accepted, the District Court should also authorize an additional four-month extension of the period for restoration, as described in 18 U.S.C. § 4241.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the District Court.

DATED this 17th day of May, 2007.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA